UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RIVER PARISH CONTRACTORS, INC. | * | CIVIL ACTION NO. 22-723 |
| | * | |
| VERSUS | * | SECTION: "A"(3) |
| | * | |
| BLACK DIAMOND CAPITAL | * | JUDGE JAY C. ZAINEY |
| MANAGEMENT L.L.C. | * | |
| | * | MAGISTRATE JUDGE EVA J. DOSSIER |
| | * | |
| | * | |

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 7)** filed by Defendant, Black Diamond Capital Management L.L.C. ("Black Diamond"). River Parish Contractors, Inc. ("RPC") opposes the motion. The motion, submitted for consideration on May 8, 2024, is before the Court on the briefs without oral argument. For the reasons that follow, Black Diamond's **Motion for Summary Judgment** is **DENIED**.

### I.      Background

This suit arises out of a series of oral representations, following which RPC provided services to a steel mill for which it allegedly remains unpaid. BD LaPlace, LLC ("Bayou Steel") operated a steel mill with related facilities in LaPlace, Louisiana. (Complaint, Rec. Doc. 1, ¶ 8). The facility provided various steel services, including melting and alloying scrap steel, and transforming it into rebar beams and finished steel plates. (*Id.*). These products were then shipped from the LaPlace facility. (*Id.*). Black Diamond is an investment advisory firm that provides support and management to its portfolio companies. (*Id.* ¶ 4). At all relevant times, Bayou Steel was owned by Bayou Steel BD Holdings II, L.L.C., which was owned by Black Diamond Opportunity Fund IV, L.P. (*Id.*). Black Diamond was a general partner with a 2.5%

1

stake in Opportunity Fund IV. (Deposition of Gregory Schunk, Rec. Doc. 73-3, at 12:16-18; Deposition of Stephen Deckoff, Rec. Doc. 73-4, at 22:21-25).[1]

      RPC asserts that Black Diamond, despite only having a 2.5% stake in Opportunity Fund IV, exercised complete control over Bayou Steel, including selecting multiple board members, one of whom served as chairman, and hiring all of Bayou Steel's executive management. (Rec. Doc. 73, at 3). Additionally, Black Diamond-affiliated board members allegedly dismissed Bayou Steel's CEO, following which the position was left vacant for an extended period. (Deposition of Alton Davis, Rec. Doc. 73-7, at 100:3-6). Alton Davis, President and COO of Bayou Steel, referred to one Black Diamond executive, Phil Raygorodetsky, as the de facto CEO of Bayou Steel. (Rec. Doc. 73-8, at 60:15-61:7).

      In early 2019, Bayou Steel approached RPC to request turnaround services, a process that involves refurbishing and updating equipment so that it operates safely and efficiently. (Rec. Doc. 73, at 6). Such a capital-intensive undertaking required Black Diamond's approval before action could be taken. (Deposition of Alton Davis, Rec. Doc. 73-8, at 95:11-17). Black Diamond initially proved difficult to convince. (*Id.* at 61:11-24). However, ultimately, Bayou Steel insisted that the turnaround service occur for the safety and efficiency of the plant. (*Id.* at 61:25-62:4). Meanwhile, RPC, aware of Bayou Steel's financial difficulties, allegedly refused to perform without a commitment from Black Diamond that it would provide the funds necessary to cover the turnaround services. (Deposition of Shelley Rome, Rec. Doc. 73-14, at 48:21-49:4). Shelley Rome, Bayou Steel's purchasing manager, advised Davis of RPC's request. (Deposition of Bud Guidry, Rec. Doc. 73-15, at 49:5-13). Davis, in turn, presented the request to Sam Farahnak and Phil Raygorodetsky, the Black Diamond-affiliated board members of Bayou Steel. (Deposition

---

[1] Throughout this Order, all deposition cites refer to the page numbers of the deposition transcripts, not the page numbers in the CM/ECF headers.

of Shelley Rome, Rec. Doc. 71-7, at 48:16-21). After speaking with the Black Diamond-appointed board members, Davis returned to Rome, conveying to her that Black Diamond had committed to funding Bayou Steel, which Rome then conveyed in some form to RPC.[2]

In July of 2019, RPC requested a meeting with Rome, Davis, and other management to discuss the outstanding balance on its account; no Black Diamond employees attended the meeting. (Rec. Doc. 73, at 8; *see* Deposition of Shelley Rome, Rec. Doc. 71-7, at 62:7-15 (not listing any Black Diamond affiliates as meeting attendees)). At that time, RPC allegedly was owed $1.1 million in outstanding charges. (Email from Shelley Rome to Michael Williams, Alton Davis, and Kevin Kirkland, Rec. Doc. 73-17, at 1). During the meeting, Davis reconfirmed Black Diamond's promise to provide funds. (Deposition of Alton Davis, Rec. Doc. 71-3, at 107:22-108:1 ("[T]he statement was kind of like it had been all along with suppliers was that we were still expecting to be funded by Black Diamond and would be able to pay them.")). RPC continued its work at the LaPlace Facility until Bayou Steel declared bankruptcy on October 1, 2019. (Rec. Doc. 73, at 8). At the time of the bankruptcy, RPC was owed $785,560.61. (*Id.*). Accordingly, RPC filed this suit, asserting that Black Diamond's oral representation, which ultimately was conveyed in some fashion to RPC, qualified as an unconditional promise to pay, and, in the alternative, that Black Diamond conveyed a promise upon which RPC detrimentally relied.

Black Diamond has moved for summary judgment on both counts. It asserts that the oral representation was not an unconditional promise to pay but, rather, created a suretyship agreement, and that it was legally inoperative because such agreements must be written. In the

---

[2] The Court notes that there is a disparity between the original promise and that conveyed to RPC. Some fact witnesses claim that the assurance was to continue to fund Bayou Steel generally; others maintain that it was to cover RPC's specific invoices.

alternative, it argues that, in the event the promise is interpreted as an unconditional promise to pay, Black Diamond never directly made such a promise to RPC, that any evidence of the manifestation is inadmissible hearsay, and Bayou Steel's employees lacked the agency or authority to bind Bayou Steel in such a manner. Finally, it claims that detrimental reliance is inappropriate for various reasons, including that no promise was ever made from Black Diamond to RPC and that RPC was patently unreasonable in relying on the statement. RPC opposes the motion. The Court considers these arguments below.

## II.    Legal Standard

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated

assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

**III.   Discussion**

*1.   Unconditional Promise to Pay*

Black Diamond first argues that this promise was one of suretyship, under which it would pay RPC's invoices in the event that Bayou Steel could not. Louisiana law dictates that a suretyship contract "is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." LA. CIV. CODE art. 3035. Suretyship contracts are subject to strict procedural requirements, including that they "must be express and in writing." *Id.* art. 3038. A corollary to the strict writing requirement is that "[p]arol evidence is inadmissible to establish either a promise to pay the debt of a third person or a promise to pay a debt extinguished by prescription." *Id.* art. 1847. Therefore, to the extent that this obligation was a suretyship agreement—that is, a promise to pay RPC in the event Bayou Steel failed to do so—the claim must fail because there was no writing. (Deposition of Shelley Rome, Rec. Doc. 73-14, at 51:2-7; Deposition of Alton Davis, Rec. Doc. 71-3, at 47:19-25 (noting that Black Diamond only made verbal agreements to fund Bayou Steel)).

However, this Court does not find this promise to be one of suretyship. Black Diamond's arguments and evidence suggest that the agreement was to continue funding Bayou Steel generally to help it operate—not to specifically cover RPC's invoices or Bayou Steel's expenses in the event of financial difficulties. (*See* Statement of Contested/Uncontested Facts, Rec. Doc. 73-1, at 7 (admitting that Alton Davis testified that the commitment was to fund Bayou Steel, "which [would] keep [it] in business and allow [it] to pay," a different commitment from a suretyship)). Article 1847's Revision Comment (d) suggests that "a writing is not required to prove a promise to pay the debt of a third person when the promisor had a material interest in making the promise and has received something in return therefor." LA. CIV. CODE art. 1847 rev. cmt. (d). This exception is known as the unconditional promise to pay.

Louisiana's jurisprudence for unconditional promises to pay suggests that the form of the obligation is different from that of a suretyship. The Louisiana Second Circuit has described it as follows:

> [I]f the promisor has bound himself as principal with the person to whom credit is extended, the rule [against parol evidence] is different. The obligation then is independent and primary. The fact that both parties are responsible for the debt does not alter the situation so far as primary responsibility to the creditor is concerned.

*Hornsby v. Rives*, 2 So. 2d 532, 534 (La. Ct. App. 2 Cir. 1941). When such a promise exists, there is no suretyship, and parol evidence may be admitted. *See Schloegel v. New Orleans Disposal Serv.*, 261 So. 2d 108, 109 (La. Ct. App. 4 Cir. 1972); LA. CIV. CODE art. 1847 rev. cmt. (d). Of course, inherent in an unconditional promise to pay in which an individual or entity becomes the principal obligor is a promise from the obligor to the obligee.[3] That is, for a promise

---

[3] Bayou Steel understood that it was the contracting party that engaged RPC. (Deposition of Alton Davis, Rec. Doc. 71-3, at 56:25-57:12 (noting that Bayou Steel was the direct contracting party and Black Diamond was never the contracting party); *id.* at 57:24-58:20 (Black Diamond did not directly receive RPC invoices)). Nevertheless, RPC argues that Black Diamond's assurances to fund Bayou Steel converted it to the principal debtor of the transaction.

to be construed as an unconditional promise to pay, that obligation must have been expressed from Black Diamond to RPC, whether expressly or through an agent. For the reasons described below, this Court finds that an issue of material fact exists as to the existence of apparent authority in conveying the promise.

As an initial matter, it is uncontested that no direct or payroll employee of Black Diamond ever directly made a promise to RPC. (Statement of Contested/Uncontested Facts, Rec. Doc. 73-1, at 7). No Black Diamond representative was present when Bayou Steel employees initially indicated that Black Diamond would cover the RPC invoices, nor was a representative present when Bayou Steel reconfirmed the promise to RPC. (*Id.* at 8; *see* Deposition of Shelley Rome, Rec. Doc. 73-14, at 51:8-18). Further, no promise was made in writing from Black Diamond to RPC. (Deposition of Shelley Rome, Rec. Doc. 73-14, at 51:2-7). However, RPC maintains that Bayou Steel extended the promise on Black Diamond's behalf. For this promise to have legal significance, Bayou Steel must have been acting with authority to bind Black Diamond when it extended the promise.

Louisiana allows for both express[4] and apparent agency, as well as apparent authority. To establish that apparent authority exists, two elements must be met: "1) the principal must first act to manifest the alleged agent's authority to an innocent third party; [and] 2) the third party must reasonably rely on the manifested authority of the agent." *Paratech, L.L.C. v. Nola Motor Club, L.L.C.*, 2018 WL 1937274, at *3 (La. App. 5 Cir. 4/25/18) (citing *Jefferson Par. Hosp. Serv. Dist. No. 2 v. K&W Diners, L.L.C.*, 65 So. 3d 662 (La. App. 5 Cir. 4/12/11)). Agency is a question of fact in Louisiana. *Legros v. Great Am. Ins. Co. of N.Y.*, 865 So. 2d 792, 795 (La. App. 3 Cir. 11/12/03) (citing *Venable v. U.S. Fire Ins. Co.*, 829 So. 2d 1179 (La. App. 3 Cir.

---

[4] RPC does not argue that express agency existed, and no facts support that Black Diamond expressly stated that Bayou Steel was its agent.

10/30/02)). On that basis, Louisiana courts often refuse summary judgment where the existence of an agency relationship is at issue. *See, e.g.*, *id.*; *McManus v. S. United Fire Ins.*, 801 So. 2d 392, 396 (La. App. 3 Cir 3/21/01); *Kidd v. Indep. Fire Ins. Co.*, 668 So. 2d 406, 409-10 (La. App. 4 Cir. 1/19/96).

Black Diamond argues that RPC was unreasonable as a matter of law in relying on Shelley Rome's apparent authority because Louisiana law dictates that third parties "seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent" and that they have "a duty to inquire into the nature and extent of the agent's power." *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987) (citing *Buckley v. Woodlawn Dev. Corp.*, 98 So. 2d 92 (1957)). *Buckley*, the case upon which *Boulos* relied in declaring that third parties have such a duty to inquire, noted that the ignorance of the third party could not be excused because "the attendant facts and circumstances show[ed] that he was aware of the fact that [the purported agent] required express and special authority" to commit the principal. *Buckley*, 98 So. 2d at 98.

It is true that RPC never inquired into the nature or extent of Rome's power to bind Black Diamond. (Deposition of Chad Bourgeois, Rec. Doc. 71-9, at 58:16-59:8 (stating that no one at RPC verified Black Diamond's commitment with Black Diamond or verified the accuracy of Rome's statement)). However, *Buckley* and *Boulos* are distinguishable. *Boulos* involved the failure of sophisticated business persons to verify the statements of an individual who claimed that he would obtain certain merchandise for them on behalf of a retail store; he confirmed his promise only with an undated receipt signed "M." *Boulos*, 503 So. 2d at 4. He also assured them that he would deliver the merchandise to the hotel at which they were staying. *Id*. Despite their industry experience, the plaintiffs failed to verify the statements of this individual, who was lingering in the front of the store and who expected cash payment. *See id.* at 2. Therefore, they

8

could not show that they acted reasonably when they relied upon his statements that he was acting on behalf of the store. *Id.* at 4. In *Buckley*, the third party also acted unreasonably. *See Buckley*, 98 So. 2d at 98. There, the third party, armed with the knowledge that it was *necessary* that the particular agent have express authority to enter into an agreement on his principal's behalf, relied blindly on the agent's assurances that he had such authority. *Id.* The court noted that a person dealing with a corporation "is generally bound to know whether or not the person who assumes to represent the corporation and to act in its name is authorized to do so." *Id.*

Different circumstances exist here. The question is not one of express agency, but one of apparent authority. RPC had a significant course of dealing with Bayou Steel, including previous dealings with and reliance on Shelley Rome. (Deposition of Chad Bourgeois, Rec. Doc. 71-9, at 58:1-21). According to the Louisiana Supreme Court, apparent authority is, in its truest sense, a form of estoppel rather than agency. *See Broadway v. All-Star Ins. Corp.*, 285 So. 2d 536, 538 (La. 1973) ("Apparent authority is a principal of estoppel, which operates in favor of third persons seeking to bind a principal to an unauthorized act of an agent. In this context, it is both fair and equitable to govern mutual rights and liabilities by *the apparent scope of an agent's authority*, because third persons, who are not privy to the actual terms of the agency agreement, must rely entirely upon the indicia of authority with which the agency is vested." (emphasis added)). That is, implicit in the concept of apparent authority—whereby a third party relies upon the "apparent scope" of the agent—is a factual determination of whether the surrounding circumstances could cause a third party to reasonably believe that the agent could bind the principal, even if the agent actually had no such authority.

The Louisiana Supreme Court has found certain manifestations to be relevant in determining whether apparent authority exists, including considerations of prior dealings

between the parties, activity permitted by the principal, ratification by the principal, failure of the principal to stop the agent from acting, and belief by the agent that it could act on the principal's behalf. *See Tedesco v. Gentry Dev., Inc.*, 540 So. 2d 960, 962 n.5 (La. 1989). Some of these circumstances exist here. For instance, Alton Davis believed that Black Diamond was the 100% owner of Bayou Steel, suggesting that actions taken by Bayou Steel may have been taken on behalf of Black Diamond, or may otherwise have been authorized by Black Diamond due to its extensive control of Bayou Steel activity. (*See* Deposition of Alton Davis, Rec. Doc. 73-8, at 89:25-90:2). He also testified that he believed Rome to be honest and reliable. (*Id.* at 93:13-24). Members of RPC similarly testified to their longstanding relationship with Rome, as well as her trustworthiness. (Deposition of Chad Bourgeois, Rec. Doc. 71-9, at 58:1-21 (twice noting a "longstanding relationship with Shelley" and that he "[did not] believe she would lie to [RPC]")). Moreover, third parties were aware of Bayou Steel's financial difficulties and the role that Black Diamond played in its operational structure. (Deposition of Alton Davis, Rec. Doc. 73-8, at 96:4-11). In fact, Bayou Steel required Black Diamond money to fund large-scale capital expenditures (Deposition of Kevin Kirkland, Rec. Doc. 73-25, at 41:5-10), with Black Diamond "expected to fund the long-term issues." (*Id.* at 41:22-24). Taking these facts together, it cannot be said as a matter of law that RPC's belief that authority existed was patently unreasonable; rather, a reasonable jury could find that these manifestations were sufficient to cause a reasonable person to believe that an agency relationship existed. Therefore, summary judgment is not appropriate at this stage.[5]

---

[5] The Court notes that there is a disparity between the promise given by Black Diamond to Bayou Steel, and that which was ultimately passed to RPC by Bayou Steel. Some testimony states that the initial promise was to fund Bayou Steel as an entity—*not* to specifically fund the projects performed by RPC or to act as the principal debtor in any service agreement. Alton Davis's deposition testimony clearly suggests such an understanding. (Deposition of Alton Davis, Rec. Doc. 71-3, at 73:4-13 (describing his understanding that "Black Diamond was going to continue to fund [Bayou Steel]")). He answered that no one from Black

2. *Detrimental Reliance*

In the alternative, RPC claims that it detrimentally relied upon Black Diamond's promise that it would continue funding Bayou Steel in choosing to provide services to Bayou Steel. Detrimental reliance requires the satisfaction of five elements: "(1) the defendant (promisor) made a promise to the plaintiff (promisee); (2) the defendant knew or should have known that the promise would induce the plaintiff to rely on it to his detriment; (3) the plaintiff relied on the promise to his detriment; (4) the plaintiff was reasonable in relying on the promise; and (5) the plaintiff suffered damages as a result of the reliance." *Masita v. Maumoulides*, 341 So. 3d 11, 25

---

Diamond ever told him that Black Diamond would pay suppliers in the event that Bayou Steel could not. (*Id.*). He also testified that he never informed RPC that Black Diamond would cover the RPC invoices in the event Bayou Steel could not; instead, he said that Bayou Steel was told that it would be funded and therefore be able to cover costs. (*Id.* at 73:14-20). When asked again about the promise, he repeated that the promise was that Black Diamond would fund Bayou Steel whenever it needed money; indeed, he would not commit to a statement that Black Diamond would specifically pay for the work performed by RPC. (*Id.* at 111:1-112:13). Phil Raygorodetsky, a Black Diamond-placed member of Bayou Steel's board of directors, noted that support payments were never expressly granted. (Deposition of Philip Raygorodetsky, Rec. Doc. 71-6, at 300:11-301:11 (stating that he has no recollection of Alton Davis, Shelley Rome, or any other Bayou Steel employee asking Black Diamond to commit to paying RPC invoices in the event Bayou Steel lacked sufficient funds to pay RPC); *id.* at 301:12-19 (stating that he was unaware of Black Diamond ever committing to backstop payments to any vendor of a portfolio company, including Bayou Steel)).

However, other evidence proves that the promise conveyed from Bayou Steel to RPC was "that Black Diamond [had] agreed to fund the project that was happening during the shutdown." (Deposition of Shelley Rome, Rec. Doc. 71-7, at 47:7-9). This promise—one which suggests that Black Diamond would act as the principal debtor by specifically funding this project—is different from a promise to generally fund Bayou Steel. Shelley Rome, however, did not believe that what she conveyed was any different from what Alton Davis had conveyed to her. When asked if her promise was "different from telling River Parish that Black Diamond's going to pay their invoices," she said that it was not. (*Id.* at 47:10-15). In fact, when questioned further about the promise and the difference between funding the plant and paying specific invoices, she stated that she considered such a difference "mincing words" and that "the intent was that Black Diamond was going to support the turnaround and assure that the funds would be available for the invoices to be paid." (*Id.* at 47:24-48:2). Rome went on to say that the reassurance provided to RPC was that "Black Diamond was committed to making sure that [RPC] got paid based on the original guarantee." (Deposition of Shelley Rome, Rec. Doc. 73-14, at 63:10-11). One RPC representative, Chad Bourgeois, noted that at a follow-up meeting, RPC sought reassurance that Black Diamond's "original agreement was still in place," which he described as "the promise to pay." (Deposition of Chad Bourgeois, Rec. Doc. 71-9, at 91:15-18). He testified that Alton Davis assured RPC that the promise remained in place. (*Id.*).

At this time, the Court does not decide whether the promise that was ultimately conveyed to RPC qualifies as an unconditional promise to pay or make any determination regarding the legal effect of the disparity of the promises, except to note the potential effect on the reasonableness of RPC's reliance.

(La. App. 1 Cir. 11/15/21); *accord Wooley v. Lucksinger*, 961 So. 2d 1228, 1238 (La. App. 1 Cir. 5/4/07) (citing references in note 11).[6]

The only way RPC's detrimental reliance claim may succeed is if Black Diamond made a promise to RPC. As discussed at length above, the promise assured that Black Diamond would fund Bayou Steel in such a manner that RPC would be paid; that promise was passed from Black

---

[6] The Court notes that this definition is not uniform across Louisiana courts. Other cases suggest that a direct promise from the defendant promisor to the plaintiff promisee is not necessary: "[T]o successfully assert a claim for detrimental reliance, a plaintiff must establish: '(1) *a representation by conduct or word*; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.'" *Patriot Constr. & Equip., LLC v. Rage Logistics, LLC*, 215 So. 3d 844, 852 (La. App. 3 Cir. 4/6/16) (emphasis added) (quoting *Luther v. IOM Co. LLC*, 130 So. 3d 817, 825 (La. 10/15/13)); *accord Belin v. Dugdale*, 43 So. 3d 272, 282 (La. App. 2 Cir. 6/30/10) (citing *Miller v. Miller*, 817 So. 2d 1166 (La. App. 2 Cir. 5/8/02)). Nevertheless, for the reasons that follow, this Court believes that Louisiana's detrimental reliance statute requires that the promise be made from the defendant promisor to the plaintiff promisee.

The Louisiana Supreme Court has hinted that such a requirement is necessary to prevail under detrimental reliance. In *Barrie v. V.P. Exterminators, Inc.*, the Louisiana Court of Appeals for the Fourth Circuit found that where a termite inspection report was relied upon by a third-party purchaser of real property, claims of negligent misrepresentation (tortious) and detrimental reliance (contractual) both must fail due to a lack of privity between the parties. 614 So. 2d 295, 296-97 (La App. 4 Cir. 1993). In reversing the judgment, the Louisiana Supreme Court only discussed the negligent misrepresentation holding, noting that such privity was not necessary in actions founded in tort. *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1015-16, 1018 (La. 1993). Although courts have long battled as to whether detrimental reliance is contractual or tortious in nature, it is settled that detrimental reliance in Louisiana is a contractually borne issue. *Murphy Cormier Gen. Contractor, Inc. v. State, Dep't of Health & Hosps.*, 114 So. 3d 567, 598 n.11 (La. App. 3 Cir. 5/22/13) ("La. Civ. Code art. 1967 is under that portion of the Louisiana Civil Code that pertains to contracts. Scholarly interpretation of La. Civ. Code art. 1967 buttresses the argument that detrimental reliance sounds in contracts . . . .").

The language of the detrimental reliance article in the Civil Code bolsters this interpretation. Civil Code article 1967 reads as follows: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." LA. CIV. CODE art. 1967. Although the language is not explicitly clear, the use of "other party" in the contractual obligations section of the Civil Code suggests that the claim is not meant to create unfettered liability in promissory estoppel claims by extending to third parties. Instead, the cause of action is intended to reach only those parties bound by privity of contract. *See Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 4/12/05) ("[T]he basis of detrimental reliance is 'the idea that a person should not harm another person by making promises that he will not keep.' Thus, the focus of analysis of a detrimental reliance claim is . . . whether a representation was made in such a manner that the promisor should have expected the *promisee* to rely on it . . . ." (emphasis added) (quoting *Morris v. People's Bank & Tr. Co.*, 580 So. 2d 1029, 1036 (La. App. 3 Cir. 1991)). Such a result is also supported by some state courts of appeals. *See, e.g.*, *Magic Moments Pizza, Inc. v. La. Rest. Ass'n*, 819 So. 2d 1146, 1149 (La. App. 5 Cir. 5/29/02) ("Furthermore, contractual cause of actions [*sic*] based upon detrimental reliance apply only to contracting parties, and not to third parties."). Therefore, this Court is satisfied that the promise must have run from Black Diamond to RPC, whether expressly or through an agent.

Diamond's membership of Bayou Steel's board to Alton Davis, to Shelley Rome, to RPC. As with RPC's first claim, an issue of material fact exists as to whether Rome had apparent authority to bind Black Diamond in expressing a promise to RPC that it would fund the turnaround project. Therefore, summary judgment may only be granted as to the detrimental reliance claim if it fails as a matter of law as to one of the other elements. Black Diamond's only other challenge in this motion asserts that RPC was unreasonable as a matter of law in relying upon the promise.

Black Diamond argues that RPC's reliance was unreasonable as a matter of law because RPC had a ready and convenient means of determining the facts concerning the representations made but failed to do so. In support of this statement, it cites *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.* for the proposition that detrimental reliance claims cannot lie "[i]f the evidence reveals that the asserting party had actual knowledge, or a ready and convenient means of determining the facts concerning representations made." No. 18-2885, 2019 WL 6877646, at *9 (E.D. La. Dec. 17, 2019) (citations omitted). The Court has reviewed the legal basis for this statement and is not convinced that such a finding precludes a claim for detrimental reliance as a matter of law. Indeed, cases discussing this requirement relate to equitable estoppel, not detrimental reliance. *See, e.g.*, *Knippers v. Lambard*, 620 So. 2d 1368, 1375 (La. App. 2 Cir. 1993); *KPW Assocs. v. S.S. Kresge Co.*, 535 So. 2d 1173, 1180 (La. App. 2 Cir. 1988); *Twillie v. H.B. Zachry Co.*, 380 So. 2d 747, 751 (La. App. 4 Cir. 1980). Further, the case in which this requirement originated noted that equitable estoppel requires an "affirmative showing that the party pleading it was *misled by the acts of the other party and forced to act to his prejudice*," and that the only diligence necessary is that "as would reasonably be expected under the prevailing

circumstances to avoid mistake or misunderstanding." *Twillie*, 380 So. 2d at 750 (emphasis added).

As an initial matter, equitable estoppel is judicially created, *see Wilkinson v. Wilkinson*, 323 So. 2d 120, 126 (La. 1975), whereas detrimental reliance is founded in the Civil Code. Further, the requirements of the causes of action are distinguishable: equitable estoppel requires a bad-faith-type showing not necessary in detrimental reliance. Finally, even if such diligence were also required in detrimental reliance cases to survive a motion for summary judgment, RPC does not appear to have acted so patently unreasonably as a matter of law that it warrants the grant of summary judgment in this instance, especially given its previous course of business with Bayou Steel.

Still, to survive summary judgment, RPC's reliance must not have been unreasonable as a matter of law in some other way. Whether a party's reliance on a representation is reasonable is a question of fact in Louisiana. *See Babkow v. Morris Bart, P.L.C.*, 726 So. 2d 423, 428 (La. App. 4 Cir. 12/16/98); *see also Drs. Bethea, Moustoukas & Weaver v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004).[7] However, Louisiana law recognizes specific situations in which a plaintiff's reliance is unreasonable as a matter of law. *St. Paul Guardian Ins. Co.*, 376 F.3d at 403. For instance, "it is unreasonable as a matter of law to rely on an offer of at-will employment, just as it is patently unreasonable to rely on the permanency of at-will employment once it begins." *May v. Harris Mgmt. Corp.*, 928 So. 2d 140, 148 (La. App. 1 Cir. 12/22/05). Additionally, "a plaintiff's reliance on an oral, gratuitous promise to transfer land was held unreasonable as a matter of law because Louisiana law provides that 'reliance on a gratuitous

---

[7] Although *Babkow* noted that reasonableness is a question of fact, it noted that business acumen may be considered in making such a determination. *Babkow*, 726 So. 2d at 428 ("[A] promisee's business acumen is properly considered when determining reasonableness of the claimed reliance." (quoting *Acad. Mortg. Co., L.L.P. v. Barker, Boudreaux, Lamy & Foley*, 673 So. 2d 1209, 1212 (La. App. 4 Cir. 4/24/96))).

promise made without required formalities is not reasonable.'" *St. Paul Guardian Ins. Co.*, 376 F.3d at 403 n.14 (quoting *Gray v. McCormick*, 663 So. 2d 480, 486 (La. App. 3 Cir. 1995)). Interpretation of a fully integrated contract is a question of law. *Wilson v. Cost+ Plus of Vivian, Inc.*, 375 So. 2d 683, 685 (La. App. 2 Cir. 1979). Therefore, when a plaintiff relies on promises made outside of an unambiguous, fully integrated agreement, such reliance is unreasonable as a matter of law. *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994).

RPC's reliance on this manifestation does not mirror any of the examples listed above. The evidence demonstrates that Black Diamond had extensive control over Bayou Steel, including over its day-to-day decision-making (Deposition of Kevin Kirkland, Rec. Doc. 73-25, at 33:7-23 (referring to the Black Diamond executives' participation in management as "extreme micromanaging")); over its expenditures and capital management (*Id.* at 40:4-42:21; Deposition of Alton Davis, Rec. Doc. 71-3, at 43:21-24); over its personnel decision-making (Deposition of Alton Davis, Rec. Doc. 73-8, at 103:22-104:17); and over handling various plant issues, such as discipline for poor performance by ground-level employees (Email from Sam Farahnak to Alton Davis, Philip Raygorodetsky, James Hogarth, and Greg Schunk, Rec. Doc. 73-30, at 3 (asking whether "we do anything from a disciplinary standpoint to hold the operator who made the mistake accountable")). On the other hand, the fact that RPC and Black Diamond are sophisticated business entities and possess financial acumen and an understanding of corporate structures and protocol may also be considered. The Court does not highlight these particular facts to demonstrate that there was or was not reasonable reliance on the promise or on any purported agency; instead, these facts merely demonstrate that a reasonable jury could find that RPC was reasonable in relying on the promise made by Bayou Steel, especially given their course of dealing with Bayou Steel and Black Diamond and the way in which the entities

operate. Because both agency and the reasonableness of RPC's reliance are issues of material

fact, this Court cannot grant summary judgment as to the detrimental reliance claim.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 71)**, filed by

Defendant, Black Diamond Capital Management L.L.C., is **DENIED**.

June 18, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

16